34 So.2d 620

### RAIA v. GOLDBERG.

6 Div. 528.

Court of Appeals of Alabama.
Feb. 10, 1948.
Rehearing Denied March 2, 1948.

436

Chas. W. Greer, of Birmingham, for appellant.

Silberman & Silberman and Victor H. Smith, all of Birmingham, for appellee.

438

CARR, Judge.

■ In the court below the cause was tried without the aid of a jury. We are not authorized, therefore, to disturb the findings of the trial judge unless the conclusions he reached are plainly and palpably contrary to the great weight of the evidence. Hackett v. Cash, 196 Ala. 403, 72 So. 52; Jackson v. Hagin, 17 Ala.App. 216, 84 So. 547.

The record includes a well prepared opinion of the judge. We incorporate it in our opinion and adopt it as expressive of our views on the questions therein decided.

"The complaint, as amended, seeks recovery upon a series of promissory notes executed by defendant and payable to the order of plaintiff. Subsequent pleadings were in short by consent with leave for both parties to offer in evidence any testimony which would be admissible under appropriate pleadings to have effect as if well pleaded.

"The evidence discloses without dispute that defendant, while acting as an agent of plaintiff, had collected and converted to his own use and benefit money rightfully belonging to plaintiff. This fact was made known to plaintiff by defendant and thereafter defendant's brother-in-law paid plaintiff a part of the money involved and defendant executed a series of notes, some of which are here sued upon, for the balance. Subsequent to the execution of the notes and after a number of the notes had been paid by defendant, defendant was adjudicated a bankrupt and received in due course a discharge in bankruptcy.

■ "Counsel for plaintiff and defendant have submitted briefs setting forth their respective contentions. Recognizing that by express provision of the Bankruptcy Act, U.S.C.A. Title 11, § 35, a bankrupt is not released from his liability for 'willful and malicious injuries to the person or property of another' nor from his liability 'created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity', Counsel apparently agree in the general application of the principle as set forth in 8 C.J.S., Bankruptcy, § 573 (cited in defendant's brief) as follows: 'The acceptance of a note from one who procures a sum of money by fraud, as an evidence of the debt thereby created, after the fraud has been discovered, does not take the debt out of the operation of this provision of the Act.'

■ "It would seem from an examination of the authorities that the principle is now well established that in an action upon promissory notes executed by one thereafter adjudicated a bankrupt the court will look behind the notes to determine whether the nature of the debt was such that it was dischargeable. American Surety Co. v. McKiernan, 304 Mich. 322, 8 N.W.2d 82, 145 A.L.R. 1235. See annotation in 145 A.L.R. 1238.

"Defendant's counsel argues that the notes in this case were not given as evidence of the antecedent debt but rather constitute an accord and satisfaction thereof precluding the plaintiff from availing himself of the recognized general rule and in support of this argument, reference is made with emphasis to the case of Burleson v. Langdon, 174 Minn. 264, 219 N.W. 155. It is to be noted, however, that the cited case deals with a different situation from that here presented. In that case the original liability of defendant was in tort only without 'any quasi contractual liability to be saved or continued', the defendant not being in privity of contract with plaintiff, and further the notes involved therein were executed jointly by defendant and two co-makers for an agreed amount, possibly a slight reduction of the original debt. Indeed, it is upon these distinguishing features, all of which are absent here, that the court based its opinion. It is, therefore, without application to the facts in this case.

■ "It seems clear from all the evidence that the notes executed by defend-

ant were given and received as evidence of the debt growing out of his embezzlement of his employer's money, and not as a payment or satisfaction thereof. Reference is made to the case of McWilliams v. Phillips, 71 Ala. 80, in which the following appropriate language is found:

" 'It is unquestioned that bills or notes or engagements of any kind whether of the debtor himself, or of a third person, will not operate at payment or satisfaction of an antecedent debt, unless it is shown that they were given and received as absolute payment. Payment of a debt is an affirmative plea and an affirmative fact, which must always be proved by the party averring it, and whoever claims that a debt, the prior existence of which is admitted or proved, has been extinguished by the substitution of another security, whether it be of higher or the same dignity as the debt, assumes the burden of proof that the substituted security was taken and accepted in extinguishment. The extinguishment arises from the agreement of the parties, not from the nature or character of the security, that may form the consideration of the agreement, but there is no implication of law that it shall operate as a payment—no implication that one cause of action is substituted for another. The presumption of law is that all such securities are taken as conditional, not as absolute payment of a pre-existing debt.' The quoted principle of law does not appear to have been departed from in this state, but it has been reaffirmed time and again and emphatically so in the case of the Tuscaloosa Lumber Co. v. Tropical Paint and Oil Co., 211 Ala. 258, 100 So. 236, though in such case the matter presented was in the form of a question vel non of novation.

▪ "The remaining contention in brief of counsel for defendant is to the effect that the notes sued upon are based on an illegal consideration. It has been long settled in this State that if an agreement express or implied to suppress a criminal prosecution forms even a part of the consideration of a contract, the transaction is against public policy and the courts will not enforce it. United States F. & G. Co. v. Charles, 131 Ala. 658, 31 So. 558, 57 L.R.A. 212; People's Bank & Trust Co. v. Floyd, 200 Ala. 192, 75 So. 940; Wilson v. Singer Sewing Machine Co., 214 Ala. 536, 537, 108 So. 358. However, the denial of a recovery because of the fear of a criminal prosecution or the natural hope or expectation that there will be no prosecution if the notes are executed finds no support in the principle stated and will be contrary to an equally well settled principle announced by the Supreme Court. Appropriate is the language of Mr. Justice Foster in the case of Underwood v. Singer Sewing Machine Co., 225 Ala. 680, 145 So 138, as follows:

" 'If the note (and mortgage) is otherwise legal, and not executed under duress, it is not rendered illegal on account of the fact that the principal is subject to criminal prosecution, unless there is an agreement to suppress the crime. The fact that such result is contemplated or hoped for, and in fact follows, does not alone render the transaction illegal. There was a possibility of the institution of a criminal prosecution, though not threatened. It could elect to do so or not. That which renders the transaction illegal is an agreement, express or implied, not to prosecute. It is certainly commendable and smacks of no illegality for the debtor, Metcalf, to pay his just debt to defendant. And if his wife's mother voluntarily undertakes to settle the debt on a sufficient consideration in the hope and expectation that as a consequence no criminal prosecution will be begun or continued, but without an agreement to that effect, the transaction is legal. The law does not give effect to a bare hope or expectation in that respect. Moog v. Strang, 69 Ala. 98; Wilson v. Singer Sewing Machine Co., supra.'

"The only testimony pertinent to the question now considered is that of the witness, M. C. Zanaty, and the plaintiff. The defendant did not testify. All of the testimony has been carefully considered in its transcribed form and as given orally before the court. There are to be found several expressions, which, if duly emphasized and construed most strongly against the plaintiff, could furnish a basis for a finding that there was an agreement not to prosecute the defendant forming a part of the consideration for the execution of

the notes. For instance, in the testimony of the plaintiff as to what he told the defendant's brother-in-law one Sunday, when the brother-in-law had suggested that he and the defendant would execute notes for the difference between the amount embezzled and the amount of cash which could be raised, there was the following question and answer:

" 'Q. Did you tell him then you wouldn't try to put him in jail?' A. That is right.'

"If the word 'then' is to be construed most strongly against the plaintiff as a conjunction denoting 'for the reason' it could be argued that there was a promise on the part of the plaintiff—made to defendant's brother-in-law though not shown to have been communicated to defendant— to the effect that there would be no prosecution, if the notes were executed. But it does not seem appropriate to give the words such construction. Plaintiff spoke broken English and it was obvious that he was unacquainted with grammatical niceties. The court is of the opinion that the word 'then' is to be given its most common signification as an adverb of time and that the statement made by plaintiff did nothing more than signify as the other testimony shows that plaintiff neither desired nor planned to prosecute the defendant but that all the plaintiff wanted was his money.

"All the testimony shows that plaintiff did not wish to prosecute defendant. He made no plans to prosecute. There was no threat of prosecution. He was only interested in a refund of the embezzled money. As to what plaintiff would have done if the notes had not been executed is a matter of the widest and wildest conjecture. There had evidently been a close association between the parties. Defendant had worked for plaintiff ten or eleven years. He was a man with a family which plaintiff doubtless well knew and which fact the brother-in-law of defendant pointed out to plaintiff apparently as a reason for sympathy. Plaintiff's reaction, when defendant confessed the embezzlement, is significant. The matter of a prosecution seemed far from his mind. He and the defendant the following Monday went to the various customers and in detail checked the accounts and confirmed the amount of embezzlement. And even then, there was no apparent thought of prosecution in the mind of plaintiff. He then said to defendant: 'How do you want to pay this, Slick?' and defendant said: 'My brother-in-law is going to help me out.'

"It appears that the first thing said about 'jail' was said by defendant's brother-in-law on a Sunday before the notes were executed in Mr. Zanaty's office. But no words or conduct of plaintiff inspired the reference. Its inspiration came from the knowledge that defendant had committed a crime. Whatever fear of a criminal prosecution was in the mind of defendant and his brother-in-law was the natural result of the crime committed for which plaintiff was in no respect responsible.

"If the disclosure on the part of plaintiff that he had no desire to put defendant in 'jail' or give him any trouble but that all he wanted was his money, constitutes an illegal consideration, it is difficult to imagine a case where a person similarly situated could conform with legal requirements. It is true that many would not have had as considerate and sympathetic an attitude, but the law does not condemn such attitude.

"The court is convinced that the notes were not based upon any consideration, in whole or in part, of any agreement, express or implied, to withhold or suppress a prosecution of defendant."

In addition to the above we make response to other questions presented by assignments of error.

The complaint is substantially in code form. Title 7, Sec. 223, form 1, Code 1940. It omits to set out the date on which the notes sued on became due and payable. Assuming, but not deciding, that this constituted a demurrable defect, it was not pointed out by the demurrers. Title 7, Sec. 236, Code 1940.

The complaint, being to all intents in the form prescribed by the code, stated a cause of action and is sufficient to support the judgment. It is also good against the demurrers interposed thereto. Letondal v. Huguenin, 26 Ala. 552; Morris & Blair v. Poillon, 50 Ala. 403; Beggs & Son v. Arontte, 80 Ala. 179; Town of Linden v. American-La France & Foamite Inds., 232

Ala. 167, 167 So. 548; Ahrens-Rich Auto Co. v. Beck & Corbitt Iron Co., 212 Ala. 530, 103 So. 556.

It is urged that there is no code form of complaint appropriate for the action here involved, since the payee of the notes sued on was Standard Provision Company and not David Goldberg, the stated plaintiff. It is true that the notes introduced in evidence show on their faces that they are made payable "to the order of Standard Provision Company." This apparent variance was explained by undisputed proof that David Goldberg did business under the name above indicated and was the individual owner of said business. In this state of the record it appears evident that the application of Supreme Court Rule 45, Code 1940, Tit. 7, Appendix, is purposeful.

In Barclift v. First National Bank of Hartselle, 225 Ala. 426, 143 So. 446, 447, Justice Gardner, writing for the court, observed: "Moreover, it appearing without conflict that defendant executed the note to said Farmers' & Merchants' Bank, if any error intervened in this respect, it was clearly without injury." See also Birmingham Electric Co. v. Echols, ante, p. ——, 32 So.2d 374.

Appellant also urges the position that the lower court was without authority to include interest in the computation of the amount of the judgment. He poses this insistence primarily in two aspects:

(1) "No claim for the principal and interest was made in the complaint. In fact, the complaint fails to allege whether the interest was payable from maturity or from date, or when any one of them became due."

(2) "No evidence was introduced to show that the interest was unpaid."

The complaint contains the averment: "* * * and payable with interest at the rate of Five Per cent (5%) per annum." This is aided by proof of the provisions of the notes which stipulate that the interest is payable from date.

This was sufficient to authorize the court to compute the interest as may be shown to be due by the agreement or by law. Braswell v. Fleming, 224 Ala. 339, 140 So. 389.

On the matter of the claimed insufficiency in the proof, the evidence discloses that the defendant had paid a number of the notes in the series, thirty, in fact. The instant suit is based on the default in those numbered from 31 to 48, inclusive. The plaintiff testified that these latter notes had not been paid. The rule, that the introduction of the notes made a prime facie case, aside, we hold that the evidence was ample to authorize the court to find that no part of the stipulated interest had been paid.

With the incorporation of the opinion of the trial judge, we have responded to each question which is presented for our review.

It is ordered that the judgment of the nisi prius court be affirmed.

Affirmed.