210 So.2d 426

James Leslie PRIDGEN

v.

Jewel HEAD.

4 Div. 247.

Supreme Court of Alabama.

Feb. 15, 1968.

Rehearing Denied May 23, 1968.

Alice L. Anderson, Enterprise, for appellant.

Rowe & Lane, Enterprise, for appellee.

LAWSON, Justice.

On September 5, 1958, Mrs. Jewel Head filed suit in the Circuit Court of Coffee, County, Enterprise Division, against James Leslie Pridgen to recover damages for injuries which she sustained in a motor vehicle collision which occurred on or about November 8, 1957. She demanded a trial by jury

Mrs. Head's complaint contained two counts. An unnumbered count, to which we will refer hereinafter as the first count, charged negligence. The second count in pertinent parts reads:

"Plaintiff claims of the defendant FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00), damages for that heretofore on to-wit: 8 November 1957, plaintiff was sitting in the cab of a one-half ton 1955 model Chevrolet Pickup truck which was parked in the unloading yard of Sessions Oil Mill Company on the West side of North Main Street, which street is also known as U. S. Highway No. 84, in the City of Enterprise, Alabama, and at a point on the West side of said street or highway just North of the railroad crossing. That then and there the defendant was driving a Chevrolet Automobile from towards New Brockton to Enterprise, Alabama, on said street or highway at a fast rate of speed. Plaintiff alleges that the defendant then and there wantonly injured plaintiff by driving the said Chevrolet Automobile into, upon, and against the Chevrolet truck in which plaintiff was sitting, as aforesaid, and thereby inflicting upon the plaintiff grievous bodily injuries, to-wit: * * *."

The defendant, Pridgen, did not appear or plead to the complaint. On October 10 or 14, 1958, judgment by default with writ of inquiry was entered against Pridgen. Plaintiff's jury demand was withdrawn. (Act 74, approved June 10, 1953, 1953 Acts of Alabama, Vol. 1, p. 103.) On November 24, 1958, the writ of inquiry was executed before the court and the following bench note was entered: "On execution of writ of inquiry, judgment for Plf. against Deft. in the amount of $3,000.00, with cost." A general judgment was entered by the Clerk in conformity with the bench notes.

Apparently no action was taken on the judgment until January 10, 1964, when, on affidavit of counsel for the plaintiff, the Circuit Clerk issued a writ of garnishment directed to Bama Cotton Mills, Inc., a corporation, Enterprise, Alabama. The writ of garnishment was served on the garnishee on January 11, 1964. Notice of the issuance of the writ of garnishment was served on Pridgen on January 13, 1964. On February 11, 1964, the answer of the garnishee was filed, wherein the garnishee answered that the defendant, Pridgen, was employed by garnishee and that it would withhold "from the salary, wages, or compensation, as required, and pay total into Court." Pursuant to the garnishment and beginning on January 20, 1964, the garnishee withheld and paid into the court at intervals of two weeks various sums of money.

On January 21, 1964, the defendant, Pridgen, filed a petition for voluntary bankruptcy, listing the judgment obtained against him by the plaintiff, Mrs. Head, together with accrued interest and costs, making a total of $4,006. The petition for bankruptcy set forth that Bama Cotton Mills, Inc., had been garnished.

On March 18, 1964, the Referee in Bankruptcy, after a hearing, entered his findings of facts and conclusions of law wherein the judgment in question was considered. The Referee refused to release to plaintiff, Mrs. Head, the funds paid into court under the garnishment and said, in substance, that it was impossible to determine from the record whether the judgment in question was rendered on one or both counts of the complaint, and, that from the evidence introduced at the hearing, the Judge of the Circuit Court of Coffee County could have fairly entered the judgment under either or both counts of Mrs. Head's complaint. The Referee further held that the court which rendered the judgment should determine whether or not the judgment in question is dischargeable under § 17 of the Bankruptcy Act (Title 11, § 35, United States Code Annotated), with section, in pertinent parts, reads:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts * * * except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, *or for willful and malicious injuries to the person or property of another, * * *.*" (Emphasis supplied.)

On June 26, 1964, the Referee in Bankruptcy rendered a judgment, order or decree, which reads in pertinent parts as follows:

"IT IS ORDERED that the said bankrupt be, and he hereby is, discharged from all debts and claims which, by the Act of Congress relating to Bankruptcy, are made provable against his estate *except such debts as are, by said Act, excepted from the operation of a discharge in bankruptcy.*" (Emphasis supplied.)

On August 17, 1964, the defendant, Pridgen, filed in the Circuit Court of Coffee County, Enterprise Division, a motion to dismiss and quash the garnishment, in which motion he set forth the bankruptcy proceedings, including the discharge.

The Judge of said Circuit Court, on August 27, 1964, entered an order setting Sep-

tember 22, 1964, as the day for hearing the said motion to dismiss and discharge the garnishment. A hearing was held on that date, at which hearing evidence was taken bearing on the manner in which the collision occurred on or about November 8, 1957, that is, the motor vehicle collision which precipitated the bringing of the suit for damages by the plaintiff, Mrs. Head, against the defendant, Pridgen.

On February 5, 1965, the court entered its judgment denying the defendant's motion to dismiss and quash the garnishment.

Thereafter, on March 8, 1965, the Clerk of the Circuit Court approved security for costs of appeal which had been executed by Pridgen and others on March 6, 1965. The citation of appeal served on the attorney for the plaintiff, Mrs. Head, showed that the appeal had been taken to the Court of Appeals of Alabama. Certificate of appeal was filed in the Court of Appeals on March 22, 1965, and the record was filed in that court on May 4, 1965.

On May 24, 1965, Mrs. Head, the appellee, filed in the Court of Appeals a motion to dismiss the appeal on the ground that that court was without jurisdiction, in that "the principal amount of the judgment, accrued interest and Court costs was in the total amount of $4,006.00." In the alternative, the appellee prayed that the cause be transferred to this court. The Court of Appeals does not have jurisdiction "where the amount involved, exclusive of interests and costs, does not exceed the sum of one thousand dollars." § 86, Title 13, Code 1940.

On June 2, 1965, the appellant, Pridgen, filed in the Court of Appeals a request for permission to file three additional assignments of error, which read:

"1. There is no return of service of process in said cause sufficient to support the judgment herein. (Tp. p. 3)

"2. There is no valid return of service of process in this cause. (Tp. p. 3).

"3. The purported return of service of process is as follows: 'Executed this 5 day of September, 1958, by leaving a copy of the within writ. H. D. Tillman, By: R. M. Sparks, D.S.' Such return is a nullity. It does not show a copy of the summons to have been served upon the appellant. (Tr. p. 3)"

On June 3, 1965, the appellant, Pridgen, filed his brief in the Court of Appeals and also on that date filed in the Court of Appeals demurrers to appellee's motion to dismiss the appeal. The appellant, however, requested that the cause be transferred to this court if he was mistaken in his belief that the Court of Appeals had jurisdiction.

On June 7, 1965, the appellee, Mrs. Head, filed in the Court of Appeals a motion to strike the request made by appellant for permission to file additional assignments of error, which motion concluded:

"If the appellee is mistaken in the relief sought in the foregoing motion she now prays permission from this Honorable Court for leave to amend the service of process, nunc pro tunc, in this cause in the trial Court below and that the record of the proceeding on the nunc pro tunc amendment be certified to this Honorable Court by the trial Court below."

On June 24, 1965, appellee filed her brief in the Court of Appeals.

On June 22, 1965, the appellant, Pridgen, filed in the Court of Appeals an instrument bearing the caption: "Demurrers to Motion of Appellee to Dismiss." As we have shown, the appellant had, on June 3, 1965, filed demurrers to the motion to dismiss.

On July 2, 1965, there was filed in the Court of Appeals a document bearing the caption: "Certification of Proceedings on Plaintiff's Motion for Permission, to Amend Sheriff's Return of Service of Process Nunc Pro Tunc." This document was forwarded to the Court of Appeals by

the Clerk of the Circuit Court of Coffee County and bears her certificate. As far as we can determine, the Court of Appeals had not acted on appellee's motion for permission to amend nunc pro tunc the sheriff's return.

On July 22, 1965, the cause was submitted in the Court of Appeals "on briefs, on motion and on merits."

On July 23, 1965, the appellant, Pridgen, filed a reply brief in the Court of Appeals.

Without any action having been taken on any motions or requests which had been filed, the Court of Appeals on October 11, 1965, transferred the entire cause to this court and submission was had here on that date "on briefs, on motions and on merits."

### Motion to Dismiss Appeal

■ The fact that the appeal was taken to the Court of Appeals rather than to this court does not justify a dismissal of the appeal. The cause has been transferred to this court in keeping with a practice of long standing where the appeal is taken to the wrong court. The motion to dismiss the appeal is denied. There is no need to consider the demurrers which appellant interposed to the motion to dismiss.

### Request to File Additional Assignment of Errors

The rule of this court in effect at the time this appeal was submitted read: "Rule 2. Additional assignments may be made before submission, only with permission of the court, after five days' written notice to adversary parties." Usually the court acts on such a request prior to submission, but no such action was taken in this case.

■ We do not think that appellant's request to file additional assignments of error should be stricken because the request was not acted on prior to submission under the circumstances of this case. So we

deny appellee's motion to strike the request.

We call attention to the fact that Supreme Court Rule 2 was amended March 21, 1966, so as to read:

"Additional assignments may be made before submission, only with permission of the court, after five days' written notice to adversary parties. No additional assignments may be made after the filing of the appellee's brief without the written consent of the appellee and leave of this court." See 279 Ala. XXIII.

■ However, the additional assignments of error are not in proper form and will not be considered. They do not allege error on the part of the trial court in any respect. King v. Jackson, 264 Ala. 339, 87 So.2d 623, and cases cited; Randolph v. Kessler, 275 Ala. 73, 152 So.2d 138; Doughty v. City of Fayette, 278 Ala. 121, 176 So.2d 481; Accident Indemnity Ins. Co. v. Feely, 279 Ala. 74, 181 So.2d 889; Thompson v. State, 267 Ala. 22, 99 So.2d 198; State v. Barnhill, 280 Ala. 574, 196 So.2d 691.

We understand appellant to take the position that, although he did not contend in the court below that the service upon him was insufficient, that he can raise that point for the first time in this court because the return of the sheriff as shown by the record was insufficient to support the judgment by default rendered against him.

In dealing with that contention we lay aside consideration of the "proceedings on plaintiff's motion for permission to amend the sheriff's return of service of process nunc pro tunc," which was marked filed in the Court of Appeals on July 2, 1965, because it is our view that such proceedings are unnecessary to a decision.

■ Conceding, without deciding, that the sheriff's return endorsed on the complaint was not sufficient to show a valid

service on the defendant, appellant, we are of the opinion that the defect was waived by the defendant when he appeared generally and filed his motion to dismiss and quash the garnishment, which motion contained no grounds challenging the sufficiency of the service upon the defendant.

In Aetna Ins. Co. v. Earnest, 215 Ala. 557, 112 So. 145, we quoted approvingly from 4 Corpus Juris, Appearances, § 64, p. 1364, as follows:

"Where a judgment has been rendered by the court without jurisdiction of the person, a general appearance after such judgment waives all objection to the jurisdiction of the court over the person. Thus a general appearance by defendant after final judgment waives any and all defects and irregularities in the service of process and return, just as fully as it does where such appearance is entered before final judgment."

In the Aetna Ins. Co. case, supra, we pointed out that in the same text (§ 65, p. 1365) many cases were cited to the proposition that: "As to the immediate parties to the action, a general appearance validates a judgment that was theretofore absolutely void for want of jurisdiction."

In Vaughan v. Vaughan, 267 Ala. 117, 121, 100 So.2d 1, we observed:

"We hold that the respondent below, the appellant here, by not limiting her appearance and by including nonjurisdictional as well as jurisdictional grounds in her motion to vacate which, as shown above, was filed long after the expiration of thirty days from the date the original decree was entered, has made a general appearance and has thereby waived any defect or insufficiency of service. * * *"

However, in the *Vaughan* case, supra, we pointed out that a motion for vacation of a decree solely on the ground of want of jurisdiction of the person does not operate as a general appearance by movant.

See Sachs v. Sachs, 278 Ala. 464, 179 So.2d 46; Hawkins v. Hawkins, 208 Miss. 686, 45 So.2d 271; Balfe v. Rumsey etc. Co., 55 Colo. 97, 133 P. 417; Stubbs v. McGillis, 44 Colo. 138, 96 P. 1005, 18 L.R. A.,N.S., 405.

We hold that the defendant's general appearance by filing the motion to dismiss and quash the garnishment cured any defects in service upon him prior to that time.

### On the Merits

We come now to the question as to whether the court below erred in denying appellant's motion to dismiss and quash the writ of garnishment. As we have heretofore indicated, the issuance of that writ was based on the default judgment. So actually we are confronted with the correctness of the holding of the court below to the effect that the said default judgment was "for willful and malicious injuries to the person" of appellee, as those words are used in § 17 of the Bankruptcy Act, supra, and was, therefore, not dischargeable.

It seems to be conceded by appellee that the first count charged negligence only and if the default judgment could be said to be based on that count alone, then it was dischargeable under the Bankruptcy Act.

Appellant, in his brief, takes the position that the second count, the pertinent parts of which we have heretofore quoted, "charges at the most mere negligence"; that "negligently and wantonly are inconsistent and repugnant"; and that "where a count of this kind is not demurred to, it should be treated as a simple negligence count." If appellant is correct in these assertions, then it would follow that the general default judgment could only have been based on the negligence of appellant and consequently was dischargeable.

But we do not agree with the construction which appellant has placed on the second count. We entertain the view that

it states a cause of action for wanton injury. The second count charges that defendant, the appellant here, "wantonly injured plaintiff" and we do not think that any of the allegations of that count are inconsistent with that charge. Negligence is not expressly alleged and the facts set out in the second count do not, in our opinion, show negligence. Our holding that the second count is sufficient to state a cause of action for wanton injury is based on the following cases: Buffalo Rock Co. v. Davis, 228 Ala. 603, 154 So. 556; Yarbrough v. Carter, 179 Ala. 356, 60 So. 833; Louis Pizitz Dry Goods Co. v. Cusimano, 206 Ala. 689, 91 So. 779; Brooks v. Liebert, 250 Ala. 142, 33 So.2d 321; Graham v. Werfel, 229 Ala. 385, 157 So. 201.

The appellant further contends that the judgment appealed from should be reversed even though the second count be construed as stating a cause of action for wanton injury in that "wanton injury as set forth in Alabama Pleading and specified by the Alabama decisions does not come within the terms willful and malicious personal injury as used in the Bankruptcy Act" and for the further reason that the trial court erred in considering evidence which was adduced at the hearing on the motion to dismiss and quash the writ of garnishment, which evidence related to the circumstances leading up to the motor vehicle collision which occurred on November 8, 1957, thereby going "beyond the official record in the original cause in which the judgment was rendered."

The record includes a well-prepared opinion of the able and experienced trial judge, wherein those questions were fully considered and answered adversely to the positions taken by appellant. We incorporate in this opinion and adopt as expressive of our views the parts of the trial court's opinion which relate to the appellant's contentions mentioned in the preceding paragraph of this opinion except in one respect. We do not want to be understood as holding that the trial court's action in denying appellant's motion to dismiss and quash the writ of garnishment can be based on the trial court's recollection of the evidence which was heard "on execution of the writ of inquiry." We point out, however, that the evidence adduced at the hearing on the motion to dismiss and quash the writ of garnishment is substantially the same as that which the trial court stated was given in connection with the writ of inquiry proceeding.

Except as indicated above, we adopt as expressive of our views the following parts of the trial court's opinion:

"Section 17 of the Bankruptcy Act provides, in pertinent parts, as follows: 'A discharge in bankruptcy shall release a bankrupt from all of his provable debts * * * except such as (2) are liabilities for obtaining money or property by false pretenses or false representations, *or for willful and malicious injuries to the person or property of another* * * *.' The question presented in this case is whether the judgment is discharged by the proceedings in bankruptcy, or whether it comes within the exceptions to said act mentioned herein and is not discharged.

"It will be observed that the judgment was general, that is, did not designate which of the counts in the complaint that it was addressed to. Defendant insists that in view of said fact, the judgment is on simple negligence. If this is correct the obligation is discharged. He further argues that were it on the wanton count that it would not come within the exceptions to the Bankruptcy Act and is therefore discharged. The case of Huckabee v. Stephens [29 Ala.App. 259], 195 So. 295, and 8 [B] C.J.S., Sec. 574(d) is relied on as authority.

"No Alabama case has been found or cited to this court that squarely decides the effect of a general judgment where there is more than one count. Other courts have considered the problem. In Reell vs. Central Illinois Electric and Gas Company [317 Ill.App. 106], 45 N.E.2d 500, quoting

from Green [Greene] vs. Noonan [372 Ill. 286], 23 N.E.2d 720, the Illinois court says, 'Where the declaration consists of several counts, one or more of which state a cause of action the gist of which is malice, with others based upon negligence only, and the verdict is general, without specifying the count on which it is based, the presumption is that the verdict is based upon a cause of action of which malice is the gist. Buck vs. Alex, 350 Ill. 167, 182 N.E. 794; Jernberg vs. Mix, 199 Ill. 254, 65 N.E. 242.' Without saying, at this point, that malice is the gist in the wanton count, no reason can be seen why this rule should not apply and the judgment addressed to the wanton count.

■ "8 [B] C.J.S. Bankruptcy, Sec. 574(d) cited in the Huckabee case is as follows: 'A claim or judgment based merely on negligence is not a willful or malicious injury excepted from the operation of a discharge in bankruptcy, even though the negligence involved was charged to be reckless or wanton, or culpable or willful.' An examination of the Huckabee case reveals that the motion to quash was tried by the lower court on an agreed statement of facts. The pertinent part of said statement of facts is that plaintiff recovered a judgment against defendant in the sum of $2,-000.00 as damages *for negligent or wanton or willful personal injury.* The Court of Appeals said, 'The above judgment being based upon *wanton negligence* and not being predicated upon a *willful, intentional or malicious act* is an obligation of the bankrupt which is dischargeable upon his petition in bankruptcy.' C.J.S., above, is cited. In its decision, the court must have considered 'wanton' as only describing the negligence mentioned. Willful personal injury is not mentioned even though said terms were a part of the agreed statement of facts. Immediately following the above quoted part of 8 [B] C.J.S., said text continues: 'On the other hand, if the negligence is predicated on, and established by, a willful and intentional or malicious act, as where the conduct of the bankrupt is alleged, in effect, to have been wanton, wanton and reckless, or willful and wanton, the claim or judgment is not released by a discharge in bankruptcy.' It appears, therefore, that a distinction is made where *negligence* is charged to be willful or wanton, and in cases where *the act* of the defendant is charged to have been willful or wanton.

"In the case here before the court, count 2 alleges a direct trespass: 'Plaintiff alleges that the defendant then and there wantonly injured plaintiff by driving the said automobile into, upon and against the truck in which plaintiff was sitting and thereby inflicting upon the plaintiff bodily injuries.' Said allegation brings said count within the last quoted part of C.J.S. rather than the first part which was apparently followed by the Court of Appeals of Alabama. It charges wanton injury.

The question then before us, does 'wanton injury' come within the definition of the terms 'willful and malicious personal injury' as used in the Bankruptcy Act? In determining whether a given set of facts is sufficient to meet the requirement of allegations of 'wanton' or 'willful', as the case may be, the Supreme Court of Alabama has many times defined said terms and distinguished them. In the case of English vs. Jacobs [263 Ala. 376], 82 So. 2d 542, the court quoted from Duke vs. Gaines [224 Ala. 519], 140 So. 600, as follows:

" '* * * wantonness is a conscious doing of some act or omission of some duty under knowledge of existing conditions that from the doing of such act or omission of such duty injury will likely or probably result. Before a party could be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury. * * *'

In Dickey v. Russell [268 Ala. 267], 105 So.2d 649, our court quoted the rule from

McNickle vs. Stripling, 259 Ala. 576, 67 So.2d [832], 833, as follows:

" * * * the concept is, of course, universal that to constitute wantonness it is not essential that the defendant should have entertained a specific design or intent to injure the plaintiff. A willful or intentional act may not necessarily be involved in wantonness. It may consist of an inadvertent failure to act by a person with knowledge that someone is probably imperiled and the act or failure to act is in reckless disregard of the consequences. Atlantic Coast Line R. Co. vs. Brackin, 248 Ala. 459, 28 So.2d 193.'

The Dickey opinion further states from Central of Georgia Ry. Co. [v. Corbitt], 118 So. 775 [755]:

" 'While as to liability and the defenses which may be interposed, there is no difference between wanton injury and willful or intentional injury, there is a well-recognized distinction in the elements of these two classes of wrongs. To constitute willful or intentional injury there must be a knowledge of danger accompanied with a design or purpose to inflict injury, whether the act be one of commission or omission, while in wantonness this design or purpose may be absent, and the act done or omitted with knowledge of the probable consequence, and with reckless disregard of such consequence. * * *'

"In construction of the Bankruptcy Act, if Alabama follows the definitions of 'willful' laid down in the cases above mentioned, a discharge in bankruptcy will release all personal injury claims except those inflicted *with a design or purpose to injure*. Such construction would be contrary to the majority of the states which have passed on the question, and to the view expressed by the Federal Courts, including the Supreme Court of U. S.

"While the courts have been liberal in attempting to draw definitions of the term 'willful and malicious' injury as used in the Bankruptcy Act, they generally agree that an injury arising from simple negligence does not come within the exception, it is true that whether a particular claim arising out of an automobile accident, alleged to survive a discharge in bankruptcy because it involves a willful and malicious injury, will be accorded that status depends upon the particular facts and circumstances surrounding the injury and specific acts of misconduct charged against the tort-feasor. See Annotation, 13 A.L.R.2d 168, 169.

"The case most frequently quoted with approval in defining what is meant by 'willful and malicious' injury as used in the Bankrupcty Act is Tinker vs. Coldwell [Colewell] 193 U.S. 473 [24 S.Ct. 505], 48 L.Ed. 754. While said case is not in point on its facts, it defines said terms. The Court said:

" 'It is not necessary in the construction we give the language of the exception in the statute to hold that every willful act which is wrong implies malice. One who negligently drives through a crowded thoroughfare and negligently runs over an individual would not, as we suppose, be within the exception. True he drives negligently, and that is a wrongful act, but he does not intentionally drive over the individual. If he intentionally did drive over him, it would certainly be malicious. It might be conceded that the language of the exception could be so construed as to make the exception refer only to those injuries to person or property which were accompanied by particular malice, or, in other words, a malevolent purpose towards the injured person, and where the action could only be maintained upon proof of the existence of such malice. But we do not think the fair meaning of the statute would thereby be carried out.'

The Tinker case also said as follows:

" 'In United States vs. Reed [2 Cir.], 86 Fed. 308, it was held that malice consisted in the willful doing of an act which

the person doing it knows is liable to injure another, regardless of the consequences; and a malignant spirit or a specific intention to hurt a particular person is not an essential element. Upon that principle, we think a willful disregard of what one knows to be his duty, an act which is against good morals, and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception.'

"In Re Dutkiewicz [2 Cir.], 27 F.2d 334, held that an allegation of a complaint that the defendant wantonly drove his automobile head-on against the plaintiff charged willful and malicious injury within the meaning of the Bankruptcy Act. This case is identical to the case at bar. See Dreitowich [Breitowich] vs. Standard Process Corp., 323 Ill.App. 261, 55 N.E.2d 392, holding that the allegations of a complaint were sufficient to charge wanton misconduct as implies a reckless disregard of consequences, that malice is the gist of the charge and it is not discharged under the Bankruptcy Act; the U. S. Supreme Court denied certiorari, 323 U.S. 801 [65 S.Ct. 561]. The case of Re Green [Greene] 87 F.2d 951; 109 A.L.R. 1188, holding that the allegation 'willfully and wantonly' came within the terms 'willful and malicious' injury as used in the Bankruptcy Act, quoted with approval from Tollison [Tolleson] vs. Southern Ry. Co., 88 S.C. 7, 70 S.E. 311, as follows:

"'Wantonly means without reasonable excuse and implies turpitude, and an act to be done wantonly must be done intentionally and with design, without excuse and under circumstances evincing a lawless disregard for the lawful rights of others, such a degree of rashness as denotes a total want of care, or a willingness to destroy, although destruction itself may have been unintentional. (Citing Cases) The word "wanton" as defined by Webster's International Diction-

ary means "reckless," "heedless," "malicious." '

"It appears that 'wantonness' or 'wanton injury' as the Alabama court has defined the terms comes squarely within the terms 'willful and malicious' injury as used in the Bankruptcy Act. It is obviously not necessary that the injury be intentionally inflicted. See McClure vs. Steele, 326 Mich. 286 [40 N.W.2d 153], 13 A.L.R.2d 160. * * *

"This court is impressed with the reasoning in the opinion of the Supreme Court of Louisiana in Rosen vs. Shingleur, 47 So.2d 141. There it was said:

"'Having in mind that to be non-dischargeable in bankruptcy the judgment must result from a "willful and malicious" injury, let us consider whether or not Congress intended that there must be over (sic) willful intent to injure. It is quite obvious that it was the intent of the legislators in forming the bankruptcy statute to discharge those debts which were the result of plain accident and misfortune. But was it the intent to discharge those debts resulting from automobile accidents wherein the negligence was so gross as to charge that the careless and unlawful operation of his automobile might well cause resulting injury?

"'Let us take a hypothetical case. The defendant at a high and illegal rate of speed drove his automobile against the traffic signal and through an intersection crowded with pedestrians; but it was quite obvious that an injury would most certainly result. * * *

"'The appalling number of deaths in this country, and in this state resulting from acts of drunken driving forbids the conclusion that their acts are excusable or anything less than malicious.

"'The Bankruptcy Act, in my opinion was never intended to shield such persons from the consequences of their in-

difference and utter disregard of the safety of others.'

I thoroughly agree.

"While there are varied views expressed, some courts hold that in determining whether the judgment is dischargeable, the record only must be stood on. Re McClure vs. Steel, supra, where defendant sought to impeach the verdict and findings of a jury. In Re Lusch [2 Cir.], 251 F. 316 seems to hold that if the claim is evidenced by a judgment, the judgment cannot be gone behind. The question then arises, what is the record?

"On the contrary, it was held in Re Cote, 93 Vt. 10, 106 A. 519, that the character of the act is the test of whether the judgment falls within the exception. And the court, to discover the character of the act, and determine whether it falls within the exception in the Bankruptcy Act, will not only look into the entire record, but also look behind the judgment. See also In Re Johnson, 211 F.Supp. 337 and Greenfield vs. Tuccillo, [2 Cir.,] 129 F.2d 854.

"The Supreme Court of Alabama has not considered this question and the Court of Appeals has considered it but once. In the case of Raia vs. Goldberg, [33 Ala.App. 435] 34 So.2d 620, the Court of Appeals of Alabama held that in an action upon promissory notes executed by one thereafter adjudicated a bankrupt the court will look behind the notes to determine whether the nature of the debt was such that it was dischargeable. In the Raia case, the defendant was discharged in bankruptcy before the suit was filed and the complaint alleged that the notes were executed for money obtained while defendant was acting in a fiduciary capacity. This should not change the rule. In said decision the court cited American Surety Co. vs. McKiearnan, 304 Mich. 322, [8 N.W.2d 82] 145 A.L.R. 1235, as authority. The decision in the American Surety case said: 'It is well settled that the courts will look behind a note,

a mortgage, *or even a judgment,* to ascertain the nature of the debt, and, if it is ascertained to be one which a discharge does not bar, it will be so adjudged.' This court can see no reason why, if notes could be gone behind, a judgment on the notes taken before bankruptcy could not be gone behind. If a judgment on a note can be gone behind, there appears to be little reason why a judgment on tort could not be gone behind to explain the nature of the act where it is alleged to have brought on wanton injury.

"In the present case, judgment by default was rendered with writ of inquiry. In executing the writ as is customary where punitive damage may be involved, this court heard the evidence of the plaintiff and her witnesses of the act claimed and the damages. The evidence disclosed that on the date and place alleged in the complaint, plaintiff was sitting in a parked truck about nine or ten feet off the street on which defendant was traveling. He was driving sixty to seventy miles per hour along a heavily traveled street in front of a business establishment, applied the brakes, ran off the street and skidded about 105 feet and into the truck in which she was sitting, injuring her. Defendant was driving while intoxicated; was arrested at the scene by Enterprise Police, charged with driving while intoxicated, entered a plea of guilty of said charge and paid a fine. The testimony was heard orally before the court but was not taken by the court reporter in view of the fact that it was by default. If the testimony heard orally by the court, which it remembers, can be considered as part of the record, the injury was clearly wanton, as the Alabama Courts have defined it, and 'willful and malicious' personal injury as stated in the Bankruptcy Act.

"At the hearing on defendant's motion to quash the attachment [writ of garnishment], defendant insisted that the record only could be considered and that the same

did not bring the judgment within the exception stated in the Bankruptcy Act, therefore, the attachment [writ of garnishment] should be quashed. The plaintiff took the position that the record was sufficient to bring the judgment within said exception, but that if it was not, the court was entitled to hear the testimony and go behind the judgment. Both sides offered evidence of the accident and surrounding facts under an announcement by the court that it would be considered if it was determined under the law that such could be considered. The evidence revealed substantially the same facts set out by the court which was heard on execution of the writ of inquiry, and will not be re-stated here.

▮ "This decision has been a hard one for this court. The attorneys for the parties have furnished extensive briefs of authorities. Many cases have been cited by them and considered by this court. It is the opinion of this court that wanton injury, as alleged in the complaint at bar, even if the judgment and complaint only can be examined, brings the judgment within the meaning of 'willful and malicious' injury used in the exception in the Bankruptcy Act. If the record can be gone behind, certainly the facts which are the basis of the allegation of wanton injury brings it within the exception and it is not discharged.

"IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED that defendant's motion to quash the attachment [writ of garnishment] in this cause is denied, and defendant is taxed with the cost for which let execution issue."

The judgment of the trial court is affirmed.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.