In re Larry W. McGIBONEY, Debtor.

**BIRMINGHAM TRUST NATIONAL BANK, Plaintiff,**

v.

**Larry W. McGIBONEY, Defendant.**

**Bankruptcy No. 80–04234.**

**Adv. No. 80–0975.**

United States Bankruptcy Court, N. D. Alabama, S. D.

Feb. 17, 1981.

Alan D. Levine, Levine & Levine, Birmingham, Ala., for Birmingham Trust Nat. Bank.

James B. Morton, Birmingham, Ala., for debtor.

Jerry W. Schoel, Birmingham, Ala., trustee.

Jack Rivers, Birmingham, Ala., U. S. trustee.

OPINION

STEPHEN B. COLEMAN, Bankruptcy Judge.

The facts alleged in the Complaint for non-dischargeability are based on the allegations of a "willful and malicious conversion" of a vehicle. There is no provision in the Bankruptcy Code for a "wilful and malicious conversion." The former provision in the Bankruptcy Act in Section 17(a)(2) ". . . or for willful and malicious conversion of property of another;" was not carried into the Code. However, Section 17(a)(8) of the Act which provides ". . . are liabilities for willful and malicious injuries to the person or property of another . . ." was re-enacted as clause (6) of Section 523 of the Code as "for willful and malicious injury by the debtor to another entity or to property of another entity."

Did the drafters of the Code intend to eliminate acts of willful and malicious conversion as grounds for objection to the discharge? *No.*

No doubt the legislative intent was to eliminate a superfluous provision which had only a brief appearance in the Bankruptcy Act by the advent of the Dischargeability Act of 1970 which provision really contributed nothing to existing law.

It may also have been the congressional intent to retain Mr. Justice Peckham's famous definition and characterization of "willful and malicious" as "a willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally" as amended by Mr. Justice Cardozo in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393, 26 A.B.R. (New Series) 577, in the following words:

"But a wilful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice. *Boyce v. Brockway,* 31 N.Y. 490; *Laverly v. Snethen,* 68 N.Y. 522; *Wood v. Fisk* (N.Y.Ct. of App.), 35 Am.B.R. 46, 215 N.Y. 233, 109 N.E. 177; *Stanley v. Gaylord,* 1 Cush. (Mass.) 536; *Compau v. Bemis,* 35 Ill.App. 37; *In re DeLauro* (D.C., Conn.), 20 Am.B.R. (N.S.) 481, 1 F.Supp. 678. There may be an honest but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a wilful and malicious one. Turning to the findings here, we see that wilfulness and malice have been unmistakably excluded. Cf. *In re Dixon* (D.C., N.Y.), 10 Am.B.R. (N.S.) 577, 21 F.(2d) 565; *In re Burchfield* (D.C., N.Y.), 13 Am.B.R. (N.S.) 400, 31 F.(2d) 118. The trial court made a special finding as follows:

"The court finds that the defendant in this case was not actuated by wilful, malicious or criminal intent in disposing of the car in question."

For many years prior to 1970, clause (8) of Section 17 was construed to *include* "willful and malicious conversion" under the terms of "willful and malicious injuries to property of another." *Collier* 17a(8), page 1650.3 et seq. Professor Vern Countryman discusses these legislative variations in his article "The New Dischargeability Law," *The American Bankruptcy Law Journal,* Vol. 45 (Winter 1971), much of which does not pertain to the question at hand, although it is a magnificent commentary any Bankruptcy Judge should find interesting reading no matter how much experience he has had.

The carrying into the Code the phrase "willful and malicious" adopts all the gloss these words have gathered by judicial interpretation over the years. The concept announced in *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904); *Crawford v. Burke,* 195 U.S. 176, 25 S.Ct. 9, 49 L.Ed. 147 (1904); *McIntyre v. Kavanaugh,* 242

U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916); *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), and the line of cases cited in Vol. 1A *Collier*, 14th Ed. starting at page 1650.3 have evolved a definition and meaning to a phrase peculiarly federal. We, who for many years, have had to interpret and translate state court judgments based on laws wholly reft and lacking of any such concept, had hoped for a congressional definition that would be easy to follow in classes of cases, such as driving while intoxicated, excessive speed, hitting non-moving or parked cars, running stop signs, selling out of trust, fraud and false pretenses and a myriad of others. The list would run the gamut of tort action or wrongful conduct and no one could compile an all inclusive list.

It seems no such specific detail of non-dischargeable acts is possible and none has been attempted.

Wantonness in the state law is an established field of liability, but a pleader casting his lot on allegations of willful and malicious conduct often ended up on the shoals of disaster for lack of proof. The Supreme Court of Alabama finally ruled that the words mean the same thing and are "tantamount." *Pridgen v. Head*, 282 Ala. 193, 210 So.2d 426; *Feore v. Trammell*, 213 Ala. 293, 104 So. 808 (1924).

■ However, Federal Courts are not bound by State Court interpretation of Federal questions and the phrase is peculiarly federal. *In re Cox*, 543 F.2d 1277, 1280; see also, 36 C.J.S. Federal Courts' § 169(1), (2) and (3).

There is, as stated above, a well defined body of federal cases stating a well defined pre-code meaning of general acceptance. *Collier* states it in a somewhat modified form as quote:

"Thus the conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury within the meaning of the exception. A technical conversion may very well lack any element of willfulness or maliciousness nec-

essary to except the liability from discharge."

Note the large number of state court cases cited indicating state court interpretation of a federal statute. This has caused some variation in interpretation which will not likely occur under the Code.

■ Since willful *and* malicious are in the conjunctive both elements must be present. Willful means done with the will or intentionally, and not inadvertently or negligently. Malicious is not used in the sense of evil, personal ill will or hatred, but simply done consciously and knowingly wrongful, and without just cause or excuse.

Intent to harm or injure is not required. Intent to do the wrongful act is sufficient and that constitutes the willful part of the act. Unintentional, negligent or technical conversion may not be willful, but note how one can become enmeshed in a shaded area. Morals may or may not be involved in a wrong.

Judging human conduct is always difficult. When asked why they sold the creditor's furniture, the bankrupt replied, "Because I was hungry"; "My baby had no clothes"; or "I did not know it belonged to anybody." Ever since Mr. Tinker tinkered with Mrs. Colwell at the turn of the century, as the eminent Professor Countryman so artfully phrased it, bankruptcy courts have sought to judge the degree of culpability, and after seventy-five years have not come up with a better definition than *Collier's* quotation. No wonder Congress has not attempted to define willful and malicious anymore than it has defined "alimony" or "in the nature of alimony", "set-off", "adequate assurance", "adequate protection" or "other professional persons", either accepting established case law or leaving the definition to future decisions.

It may be that future Bankruptcy Judges may establish a new and novel norm for "willful and malicious" and a different list of dischargeable conduct. If "intent to harm" is to play a greater part, then conflict will be greatly narrowed and a departure from the old concept will be attained. To the writer, it is more a matter of guilty knowledge or wrongdoing. *Tinker v. Col-*

*well*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904); *McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916); *Crawford v. Burke*, 194 U.S. 176, 25 S.Ct. 9, 49 L.Ed. 147 (1904).

Applying the test to this case requires a review of facts. The debtor and his wife had been long time customers of the bank and had both secured and unsecured loans, which we can assume were handled on a fairly satisfactory basis. On or about May 3, 1979, the debtor consolidated his secured and unsecured indebtedness into one note for $3,741.92, pledging as collateral two vehicles, which were subject to certificate of title evidencing a lien in favor of the Birmingham Trust National Bank, which were left as usual in possession of the bank. Shortly after May 3, 1979, the date of the transaction, the debtor received in the mail the certificates with proper releases of lien in the standard form. The debtor testified that he thought the bank had decided to make him an unsecured loan, as he had had both types of loans previously and the releases were regular on their face. That he received no advice from the bank countermanding the releases or that a mistake had been made until after he and his wife borrowed funds from a credit union and pledged the two vehicles as security. That the bank did notify him *after* the credit union loan that an error had been made and he had no right to use the cars as collateral. That he considered the bank officer a personal friend and had no reason to know that the release was through error.

The bank officer did not produce a letter or other written notice and was uncertain whether he notified debtor prior to the credit union loan or not. Apparently the bank became aware of its mistake shortly after the occurrence but could produce no positive evidence of just when it advised the debtor.

The issue becomes one of guilty knowledge and whether debtor acted without just cause or excuse. The burden of proof is on the bank, Rule 407, Rules of Bankruptcy Procedure. The complaint alleges that the debtor used the certificates of title and releases after he was advised of the mistake.

The bank has wholly failed to establish this allegation and the court is unwilling to find that the debtor was "without just cause or excuse."

It is well settled under former law and it continues to be true that the exceptions set forth in Section 17(a)(2) of the Bankruptcy Act and Section 523(a)(6) of the 1978 Code are to be strictly and literally construed so as to discharge all debts except those specifically within the exceptions. *Davidson-Paxon Co. v. Caldwell*, 115 F.2d 189 (5th Cir. 1940); *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915).

Accordingly, IT IS ADJUDGED AND ORDERED that the Complaint be denied and dismissed, and that the debt sued for herein be, and the same is hereby adjudged dischargeable and the discharge shall accordingly be issued.

Pursuant to Rule 52, Federal Rules of Civil Procedure, and Rule 752, Rules of Bankruptcy Procedure, this Memorandum of Opinion shall constitute the Findings of Fact and Conclusions of Law herein on the separate Order entered on January 28, 1981.