In re Elvin Dewayne HOLLIDAY and Linda Gail Dyson Holliday, Debtors.

**J. Junior HAYMON, Plaintiff,**

v.

**Elvin Dewayne HOLLIDAY, Defendant.**

Bankruptcy No. 481–00565–LC.
Adv. No. 482–0023.

United States Bankruptcy Court,
W.D. Louisiana.

July 11, 1983.

---

Maurice L. Tynes, Lake Charles, La., for plaintiff J. Junior Haymon.

A.J. Fazzio, Lake Charles, La., for defendant and co-debtor Elvin Dewayne Holliday.

## OPINION

RODNEY BERNARD, Jr., Bankruptcy Judge.

A petition for relief under Chapter 7 of Title 11 of the United States Code was filed by the debtors on October 22, 1981. On February 22, 1982, the plaintiff filed a Complaint to Determine Dischargeability of a debt. A hearing was held on the Complaint on May 26, 1983. It should be noted that Linda Gail Dyson Holliday, the former wife of Elvin Dewayne Holliday, is not a party to this adversary proceeding.

The debt at issue in this matter arose from the wrongful conversion of a timber loading machine known as an "Iron Mule Loader" that the plaintiff purchased from the defendant on or about July 1, 1978. The dispute arose out of an employment relationship between the parties. Holliday, the debtor, was a general contractor or producer for a paper mill and he had several subcontractors, including Haymon, working for him. The subcontractors were paid a specified price per cord of wood in return for cutting the timber and loading it for transportation to the mill. Mechanical loaders were used to expedite the process. Due to the machines' cost they were generally purchased on credit by Holliday, who then verbally arranged with a subcontractor to work a machine on the Holliday job and to pay on it at a specified weekly rate for each week that the machine was in use. Such a working relationship is common in the logging industry.

On April 4, 1978, Holliday purchased from Sanders Trucking Company a new 1978 Gafner Iron Mule. The cash price was $33,500.00 but the purchase was financed by Holliday through Commercial Credit Equipment Corporation. The note was secured by a chattel mortgage.

Holliday approached the plaintiff, Haymon, concerning taking over the machine. The parties reached an agreement that Haymon would take possession of the machine and pay $250.00 per week to Holliday for each week it was in use; the amount being deducted from sums due Haymon each week on the job. Haymon would have use of the machine, but Holliday would retain title to the machine until all payments were completed. Upon completion of payments Holliday would transfer title.

As agreed, Haymon went into possession of the loader and used it in performing work for Holliday until May 15, 1980, when Holliday temporarily closed down his operation because of wet weather. Up until this time weekly deductions were made by Holliday from Haymon's earnings; for a total withholding of $19,400.00.

When the job was shut down on May 15, 1980, Haymon made arrangements to work for another contractor. Shortly thereafter Holliday resumed operations and requested Haymon to return but was informed that Haymon was satisfied with his new job arrangement and would not return. Haymon told Holliday that he wanted to pay off the machine and Holliday agreed he could do so, but the parties disagreed on the amount of the payoff. On or about June 30, 1980, Holliday, without the knowledge or consent of Haymon, took possession of the loader and put it to his own use.

Haymon filed suit in state district court wherein he alleged that title passed to him at the time of the agreement, on or about July 1, 1978, thus, the taking by Holliday without consent or judicial process constituted wrongful conversion. The trial court found that no contract of sale existed between the parties and accordingly ruled against the plaintiff. On appeal, the Court of Appeal, Third Circuit, State of Louisiana, Docket No. 8391, reversed the judgment of the trial court and rendered judgment in favor of the plaintiff, J. Junior Haymon, and against the defendant-debtor, Dewayne Holliday, for the sum of $19,400.00 together with legal interest from date of judicial demand and all costs in the trial and appellate courts. The judgment of the Court of Appeal for the Third Circuit is now a final judgment.

The complaint presently before the court alleges that Mr. Holliday is indebted to Mr. Haymon in the sum of $19,400.00 together with legal interest and costs. Said debt arises out of the state court judgment in favor of Mr. Haymon for damages caused by Mr. Holliday's unlawful conversion of the "Iron Mule Loader". The state court judgment has been recorded in the mortgage records for the Parish of Beauregard, and constitutes a judicial mortgage. The complaint further alleges that this debt is nondischargeable in bankruptcy because it is a debt for willful and malicious injury.

■ The first question to be answered is whether a conversion occurred. Louisiana Civil Code Article 2456 provides as follows:

"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."

Accordingly, a sale is complete upon the parties' agreement as to the item to be bought and sold and the price to be paid.

■ The common law conditional sales contract for movable property whereby the parties agree that the seller will retain title until the purchase price is paid in full is not recognized in Louisiana. *Roy O. Martin Lumber Co. v. Sinclair*, 220 La. 226, 56 So.2d 240 (1951). Consequently, the seller is divested of ownership as soon as the buyer becomes bound to pay the price.

■ Since the agreement between Mr. Holliday and Mr. Haymon specified the item to be bought and sold and the price to be paid, the sale was complete on the date

of their oral agreement. Considering that Mr. Holliday was divested of ownership of the timber loader on or about July 1, 1978, his seizure of that piece of equipment on or about June 30, 1980 without the consent of Mr. Haymon constituted conversion. This court finds that Mr. Holliday committed the tort of wrongful conversion. Additionally, this court adopts the findings of the Court of Appeal, Third Circuit, State of Louisiana in the action styled, "J. Junior Haymon vs. Dwayne Holliday", No. 8391.

The next question to be answered forms the crux of this case, and that is whether this act of conversion constitutes willful and malicious injury under Section 523(a)(6) of the Bankruptcy Code. Section 523(a)(6) provides that a discharge does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity . . ." The legislative history indicates that the phrase "willful and malicious injury" includes willful and malicious conversion. 124 Cong.Rec.H. 11,095–6 (Sept. 28, 1978); S. 17,412–13 (Oct. 6, 1978).

Section 523(a)(6) of the Bankruptcy Code has been interpreted as follows:

"An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. The word 'willful' means 'deliberate or intentional', a deliberate or intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury. [Footnotes omitted.] 3 Collier on Bankruptcy ¶ 523.-16[1] (15th ed.).

The term "malicious" has been further defined to require *knowing* wrongfulness or *knowing* disregard of the rights of another. *Birmingham Trust National Bank v. McGiboney (In re McGiboney),* 8 B.R. 987, 989 (Bkrtcy.Ct.N.D.Ala.1981); *The Farmers Bank v. McCloud (In re McCloud),* 7 B.R. 819, 825–26, 3 C.B.C.2d 701, 708–9 (Bkrtcy. M.D.Tenn.1980), citing *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754

(1904); *McIntyre v. Kavanaugh,* 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916); *Bennett v. W.T. Grant Co.,* 481 F.2d 664 (4th Cir.1973).

There is no doubt that Mr. Holliday's conversion of Mr. Haymon's property was willful. It is obvious from the record that he intentionally took the timber loading machine from Haymon without Haymon's consent. Additionally, under Louisiana law, Holliday's conduct was wrongful. Thus, the remaining issue is whether Mr. Holliday's actions were malicious, or knowingly wrongful and without just cause or excuse.

The burden of proof in this matter is on the plaintiff seeking to have the debt declared nondischargeable. *See Birmingham Trust National Bank v. McGiboney (In re McGiboney),* 8 B.R. at 990, citing Rule 407, Rules of Bankruptcy Procedure. This court finds that the plaintiff has failed to establish the essential element of malice in Mr. Holliday's conduct.

It is clear from Mr. Holliday's testimony at the hearing to determine the dischargeability of the debt that he did not know that taking the timber loader from Mr. Haymon was wrong. Mr. Holliday had financed the piece of equipment with a lender, he remained obligated on the debt to the lender, and actually believed that he still owned this property at the time he took it from Mr. Haymon. Additionally, this was not the first agreement of this type that these parties had contracted. Haymon had previously acquired machines from Holliday and assumed payments, however in two instances the machines were traded in before fully paid. On a third occasion Haymon voluntarily released a machine to Holliday when he was unable to work due to inclement weather. It was the belief of Holliday, as well as Haymon, that the machine would not become Haymon's until he had made final payment under the terms of their agreement.

It is very easy to see how laymen could assume that title would not pass from seller to buyer until the final payment was made,

even though such an agreement is not effective under Louisiana law. This type of agreement is common in the logging industry.

This court finds an absence of malice in Mr. Holliday's conduct. His actions constitute a technical conversion not subject to the exception from discharge. Technical conversions have been treated by the courts as follows:

> "[A] claim founded on a mere technical conversion without conscious intent to violate the rights of another and under mistake or misapprehension, is dischargeable. 3 Collier on Bankruptcy, Para. 523.-16[3] (15th ed., 1979), citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151 [79 L.Ed. 393] (1934). In *Davis,* Justice Cardozo, writing for the court, observed, '... a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice ... [upon] an honest or mistaken belief." 293 U.S. at 331–332, 55 S.Ct. at 152–153.

*Liberty National Bank & Trust Co. v. Hawkins (In re Hawkins),* 6 B.R. 97, 98–99, 6 B.C.D. 1054, 1055 (Bkrtcy.Ct.W.D.Ky.1980).

In summary, although Mr. Holliday's conversion of Mr. Haymon's property was intentional and wrongful, the circumstances of the conversion, especially in light of the parties' past dealings, clearly show just cause and excuse for Mr. Holliday's conduct. He honestly believed the machine belonged to him. Accordingly, his unauthorized assumption of dominion over the piece of equipment was not malicious. Thus, this court is of the opinion that the debt did not arise from willful and malicious injury by the debtor. Accordingly, the debt based on conversion by Mr. Holliday of Mr. Haymon's property is a dischargeable debt.