**Electronically Filed
Supreme Court
SCWC-23-0000415
04-MAR-2025
10:03 AM
Dkt. 25 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

ELIZABETH DAILEY AND MICHAEL DAILEY,
Petitioners/Appellants-Appellants,

vs.

DEPARTMENT OF LAND AND NATURAL RESOURCES;
BOARD OF LAND AND NATURAL RESOURCES,
Respondents/Appellees-Appellees.
_____

SCWC-23-0000415

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-23-0000415; CIVIL NO. 1CCV-22-0000828)

MARCH 4, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA, AND DEVENS, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

This case concerns whether an appeal improperly filed in the Environmental Court of the First Circuit ("environmental court") can and should be transferred to this court.

On July 15, 2022, Michael Dailey and Elizabeth Dailey (together, "the Daileys"), son and mother, filed an appeal with

the environmental court.  The appeal was from a 2022 Board of Land and Natural Resources ("BLNR") contested case decision regarding a seawall allegedly constructed makai[1] of the shoreline and within the conservation district.  After the Daileys filed their opening brief, the BLNR raised appellate jurisdiction issues in its answering brief.  The BLNR pointed out that Act 48 of 2016 ("Act 48") had amended the law to require the Daileys' appeal to be filed directly with this court.

Specifically, section 2 of Act 48 added a new statute, Hawai'i Revised Statutes ("HRS") § 183C-9 (Supp. 2016).  Subsection (a) provides that "any contested case under this chapter shall be appealed from a final decision and order . . . upon the record directly to the supreme court for final decision, except for those appeals heard pursuant to this chapter arising in whole or in part from part III of chapter 205A . . . ."[2]  HRS Chapter 183C concerns the conservation district.  Part III of HRS Chapter 205A concerns shoreline setbacks.

---

[1]     "Makai" means "on the seaside, toward the sea, in the direction of the sea." *Kai*, Mary Kawena Pukui & Samuel H. Elbert, Hawaiian Dictionary (6th ed. 1987).

[2]     Act 48 was effective from August 1, 2016 to June 30, 2019.  2016 Haw. Sess. Laws Act 48, at 82.  Act 213 of 2019 made HRS § 183C-9 a permanent statute.  2019 Haw. Sess. Laws Act 213, at 637.

BLNR then filed a motion to dismiss alleging lack of appellate jurisdiction. The Daileys argued the environmental court had jurisdiction, but they also asked the environmental court to transfer the appeal to this court if it determined it lacked appellate jurisdiction. The environmental court dismissed the appeal based on a lack of appellate jurisdiction and ruled it lacked power to transfer the appeal to this court.[3] The Intermediate Court of Appeals ("ICA") affirmed.[4]

On certiorari, the Daileys raise two issues:

> 1. Whether the ICA gravely erred in affirming the environmental court's dismissal of the Daileys' contested case appeal by incorrectly finding that the HRS Chapter 205A shoreline setback exception in HRS § 183C-9 did not apply. Answering this question in the affirmative would obviate the need to address the second question.
>
> 2. If the ICA did not err in affirming the finding above, the question becomes whether the ICA gravely erred in affirming the environmental court's Conclusion of Law denying a direct transfer request to the Hawai'i Supreme Court for lack [of] authority for such a transfer.

On the first issue, as further explained below, we hold that the Daileys' appeal does not involve the HRS Chapter 205A shoreline setback exception in HRS § 183C-9; therefore, this court has exclusive appellate jurisdiction.

---

[3]    The Honorable Jeffrey P. Crabtree presided.

[4]    During the pendency of the ICA appeal, Elizabeth Dailey passed away. Michael Dailey asked that the appeal proceed in his name as the remaining appellant.

On the second issue, we need not decide whether the ICA erred by affirming the environmental court's dismissal. The power of our courts to transfer appeals was not clear when the environmental court and the ICA issued their rulings. Even absent error, this court has discretion under HRS § 602-59(a) (2016) to accept certiorari. See State v. Hussein, 122 Hawai'i 495, 514, 229 P.3d 313, 332 (2010). Here, we accepted certiorari to consider whether the Daileys' appeal should be transferred to this court based on our holdings in Honoipu Hideaway, LLC v. Land Use Commission, 154 Hawai'i 372, 550 P.3d 1230 (2024), and Rosehill v. Land Use Commission, 155 Hawai'i 41, 556 P.3d 387 (2024). These opinions post-dated the ICA's May 16, 2024 summary disposition order ("SDO").

Honoipu and Rosehill addressed appeals filed in circuit courts from Land Use Commission ("LUC") declaratory orders; the appeals were filed before our opinion in In re Kanahele, 152 Hawai'i 501, 526 P.3d 478 (2023). In Kanahele, we held that LUC declaratory orders have the same status for judicial review as contested case orders. 152 Hawai'i at 512, 526 P.3d at 489. As a result, based on amendments to appellate jurisdiction in Act 48, appeals from LUC declaratory orders were also required to be filed directly with this court. 152 Hawai'i at 511-12, 526 P.3d 488-89.

4

After Kanahele, in Honoipu, a reserved question case, we held that a circuit court has inherent and statutory authority to transfer a timely-filed appeal nunc pro tunc to this court. 154 Hawai'i at 374, 550 P.3 at 1232. Then, in Rosehill, after accepting transfer of an appeal to the ICA, we deemed the transfer accepted nunc pro tunc to the date the appeal was originally filed in the circuit court. 155 Hawai'i at 45, 556 P.3d at 391.

Both Honoipu and Rosehill limited their holdings regarding appellate jurisdiction to the "limited circumstances" of those cases, where appeals of LUC declaratory orders were pending in lower courts when Kanahele was published. Honoipu, 154 Hawai'i at 374, 550 P.3d at 1232; Rosehill, 155 Hawai'i at 50, 556 P.3d at 396. But, as noted in Honoipu, our appellate courts have long adhered to the policy of permitting litigants, where possible, to appeal and to have their cases heard on the merits. Honoipu, 154 Hawai'i at 376, 550 P.3d at 1234 (citation omitted). And, as further noted in Honoipu, various other jurisdictions have held that courts have inherent authority to transfer appeals when they have been filed in the wrong court. See Honoipu, 154 Hawai'i at 376, 376 n.3, 550 P.3d at 1234, 1234 n.3.

The inherent and statutory power of our lower and appellate courts to order transfers of appeals to the court with appellate jurisdiction, as well as our policy of permitting litigants,

5

where possible, to appeal and to have their cases heard on the merits, also applies here. Not allowing a transfer would preclude a decision on the merits of the Daileys' appeal.

Hence, we hold that, based on the inherent and statutory bases providing courts with the power to order transfers of appeals to the court with appellate jurisdiction, the environmental court had the power to transfer the Daileys' appeal to this court. Under the circumstances of this case, we order the environmental court to transfer the appeal to this court nunc pro tunc to the date of its July 15, 2022 filing as soon as this court's judgment on appeal has entered. The appeal on the merits is then to proceed in this court pursuant to the Hawai'i Rules of Appellate Procedure ("HRAP"), with deadlines to correspond with the date the appeal is actually transferred to this court.

## II. Background

### A. Factual background

The Dailey family has owned an ocean-front residential property in Mokuleia, on the North Shore of O'ahu, for decades. The late Fred Dailey, husband of Elizabeth and father of Michael, was also a previous owner. In December of 1969, Hawai'i was hit with a swell that brought waves that caused destruction to homes along the North Shore, including the Dailey property. In what was likely early 1970, Fred Dailey constructed a large,

6

loose rock revetment on the makai side of the property to protect the land and home from high surf damage and beach erosion.

The structure lasted for decades, but in the early 2000s, members of the public began complaining to the Department of Land and Natural Resources ("DLNR") that the deteriorating revetment was sending boulders rolling down onto the beach. It appears that by then the beach had eroded and the rock pile revetment was below the highest wash of the waves and within the conservation district.[5] The DLNR found that rocks from the revetment were being worn down by surf and were rolling onto the beach. DLNR's Office of Conservation and Coastal Lands ("OCCL") issued a notice indicating it had no record of ever approving the structure and recommended its removal.

Instead of removing the revetment, around 2006 to 2007, without obtaining a permit, the Daileys built a new seawall with a cement cap on top of the 1970 rock pile. The OCCL then recommended that BLNR fine the Daileys and order them to remove the structure. BLNR agreed with the recommendation, and the Daileys sought a contested case hearing.

---

[5] The "conservation district" is defined as "those lands within the various counties of the State bounded by the conservation district line. . . ." HRS § 183C-2 (2023). In this case, it means the lands makai of the shoreline.

**B.    Procedural background before this appeal**

This is the third judicial appeal regarding this matter.

**1.    First appeal and remand**

On June 13, 2014, BLNR issued a decision and order finding the seawall violated permissible uses within the conservation district and fined the Daileys.  The Daileys appealed this decision to the circuit court.  On March 20, 2015, the circuit court remanded the matter to the BLNR for the BLNR to prove the original rock pile revetment was built within the conservation district.  This remand order was not further appealed.

On remand, on June 23, 2017, the BLNR determined that the OCCL had not met its burden, but also determined that construction of the new seawall constituted a violation.

**2.    Second appeal and remand**

On July 21, 2017, the Daileys filed their second appeal, this time with the environmental court.[6]  Although this appeal was filed after the August 1, 2016 effective date of Act 48, the BLNR did not contest the environmental court's appellate jurisdiction.  In this second appeal, the environmental court concluded there were procedural infirmities, vacated the BLNR

---

[6]    HRS Chapter 604A (2016), which created our environmental courts, came into effect on July 1, 2015.  2016 Haw. Sess. Laws. Act 218, at 737-39.  Pursuant to HRS § 604A-2(a)(1) (2016 & Supp. 2018), from that date, the environmental court had exclusive jurisdiction of administrative appeals arising out of HRS title 12, which includes HRS Chapter 183.

decision, and remanded for a contested case hearing that is the subject of this third appeal. This decision was also not further appealed.

### 3. BLNR decision

After the subject contested case hearing, the BLNR issued its findings of fact, conclusions of law, and decision and order on June 16, 2022 ("BLNR FOF/COL"). The BLNR noted issues regarding pinning down the location of the shoreline for purposes of this case. BLNR had not established the location and boundaries of the shoreline when Fred Dailey built the original rock pile revetment; therefore, BLNR was not able to establish that the original rock pile revetment was built makai of the shoreline and in the conservation district. As such, BLNR considered the original rock pile revetment to be a "nonconforming" (once legal) structure.

By the early 2000s, however, due to beach erosion, the highest wash of the waves was clearly above the deteriorating revetment. BLNR noted that the Daileys' first attempt to certify their shoreline in 2007 was rejected because they tried to certify the shoreline against the face of their new seawall. Based on the Daileys' second request, however, on September 15, 2011, DLNR certified the shoreline mauka[7] of the seawall, which

---

[7] "Mauka" means "inland." *Mauka*, Mary Kawena Pukui & Samuel H. Elbert, Hawaiian Dictionary (6th ed. 1987).

meant the seawall was within the conservation district. Although the Daileys later complained about the location of the certified shoreline, they neither appealed the certification nor sought a new certification.

The BLNR then concluded that the Daileys "willfully violated H.R.S. § 183C-4(b), and H.A.R. §§ 13-5-30(b)(1994), 13-5-22(P-9)(C-1)(1994), 13-5-23(L-5)(D-1)(1994), and 13-5-37(e)(1994) by demolishing a nonconforming rock pile and reconstructing it into an unauthorized and unpermitted seawall in the Conservation District on or about December of 2006 through February of 2007." The BLNR determined that the seawall and remnants of the rock pile have persisted as a continuing violation since that time. BLNR also concluded that the seawall construction exceeded what could lawfully be done on a nonconforming structure without permits. BLNR fined the Daileys $8000 and ordered them to remove the unauthorized seawall, all rocks makai of and underlying the seawall, and any remaining sections of the old rock pile.

BLNR determined that regardless of where the shoreline had originally been, the Daileys had gone well beyond what would constitute legal repairs to the nonconforming rock pile revetment by cementing it over and building a seawall on top of it. The BLNR concluded that the seawall violated HRS chapter 183C and its relevant administrative rules because it could not

10

have been built in the conservation district without a permit and would not have been considered a legal repair of a nonconforming structure even if it remained in the shoreline setback area.

## C.   Appeal to the environmental court

### 1.   Appeal

On July 15, 2022, the Daileys filed a notice of appeal of the BLNR's FOF/COL with the circuit court.  They cited HRS §§ 91-14 and 183C-8 as the statutory bases for their appeal.  They quoted a 1994 version of HRS § 183C-8 as stating, "Any final order of the department based upon this chapter may be appealed to the circuit court of the circuit in which the land in question is found.  The appeal shall be in accord with chapter 91 and the Hawaii rules of civil procedure."  The circuit court later appropriately redesignated the matter as being in the environmental court.[8]

In its answer to the Daileys' statement of the case, the BLNR raised as a defense the environmental court's lack of subject matter jurisdiction over the Daileys' appeal.  The DLNR filed a joinder.

_____

[8]     See supra note 6.

## 2. Briefing before the environmental court

### a. Daileys' opening brief

The Daileys' October 17, 2022 opening brief addressed the merits of the BLNR's FOF/COL in addition to appellate jurisdiction. Because this certiorari proceeding deals only with appellate jurisdiction, we do not discuss the briefing except as relevant to appellate jurisdiction issues that continue to be raised on certiorari.

Regarding appellate jurisdiction, the Daileys pointed out a "jurisdictional split" between the City and County of Honolulu ("the City") and the DLNR along the shoreline. They explained that land mauka of the shoreline is within City jurisdiction under HRS chapter 205A while land makai of the shoreline is under DLNR jurisdiction under HRS Chapter 183.

### b. BLNR's answering brief

In its answering brief, which DLNR joined, BLNR raised the threshold question of whether the environmental court had jurisdiction to hear the Daileys' appeal. BLNR pointed out that the Daileys cited an outdated statute for their appeal; HRS § 183C-8 had provided that conservation district contested case proceeding appeals would be heard by the circuit court. BLNR noted, however, that Act 48 had vested appellate jurisdiction

over HRS chapter 183C contested case appeals directly with this court.

BLNR acknowledged that the environmental court still retained jurisdiction over appeals concerning HRS Chapter 205A Part III.  BLNR asserted, however, that the Daileys' case did not involve such issues and concerned only a seawall constructed makai of the shoreline, wholly within the conservation district. BLNR noted that the Daileys themselves, in their notice of appeal, did not cite to HRS Chapter 205A Part III.

BLNR acknowledged that there had been counts related to HRS Chapter 205A Part III brought against the Daileys in a prior contested case hearing, but noted that those counts had been dismissed and no such claims had since been included.  BLNR notified the environmental court that it would be preparing a separate motion to dismiss the Daileys' appeal.

### c.  Daileys' reply brief

In their reply brief, the Daileys pointed out that even after the enactment of Act 48, their 2017 (second) appeal had been to the environmental court.  The Daileys noted that the BLNR did not contest appellate jurisdiction, which the environmental court purported to exercise.  The Daileys also argued that their appeal noted the jurisdictional split between the City and the BLNR and asserted that their appeal involved HRS chapter 205A Part III.

The Daileys alternatively asked the environmental court to transfer their appeal to this court in the event it ruled it lacked appellate jurisdiction.

### 3.    BLNR's motion to dismiss

#### a.    BLNR's motion

BLNR then filed a motion to dismiss on November 22, 2022, which DLNR joined.  BLNR elaborated on its position that there were no shoreline setback issues under HRS Chapter 205A Part III at issue in the instant appeal.  BLNR explained that DLNR staff had initially alleged HRS §§ 205A-43.6 and -44(b) violations; BLNR dismissed that claim, however, because the City was the entity with jurisdiction over enforcement of HRS Chapter 205A shoreline setback statutes.  According to BLNR, no further allegations regarding the shoreline setback area were made.

BLNR also pointed out that the shoreline determination for the subject property was made in 2011, when the shoreline was certified as mauka of the Daileys' rock revetment.  The Daileys had not appealed this determination.  BLNR emphasized that, in any event, the current appeal concerned an interpretation of nonconforming uses in the conservation district and did not involve shoreline setback issues.

#### b.    Dailey's memorandum in opposition

In opposition, the Daileys argued that their appeal triggers the HRS Chapter 205A Part III exception of HRS § 183C-

14

9(a) because, over the course of fifteen years, the parties had argued over the location of the shoreline in reference to the revetment. They asserted that the movement of the shoreline in the mauka direction gave rise to the enforcement action against them.

### c.   BLNR's reply

In its reply, which the DLNR joined, the BLNR additionally argued that subject matter jurisdiction can be raised at any time and it did not matter that the 2017 appeal was mistakenly entertained by the environmental court.

### d.   Supplemental briefing

The environmental court invited supplemental briefing as to whether the BLNR's FOF/COL implicated HRS Chapter 205A Part III. BLNR filed a supplemental brief quoting the following portion of its FOF/COL to argue that the Daileys' violation notice did not arise out of HRS chapter 205A Part III and instead arose only out of HRS chapter 183C:

> The BLNR . . . finds and holds under the evidentiary record of this contested case that Petitioners Elizabeth Dailey and Michael Dailey willfully violated H.R.S. § 183C-4(b), and H.A.R. §§ 13-5-30(b)(1994), 13-5-22(P-9)(C-1)(1994), 13-5-23(L-5)(D-1)(1994), and 13-5-37(e)(1994) by demolishing a nonconforming rock pile and reconstructing it into an unauthorized and unpermitted seawall in the Conservation District on or about December of 2006 through February of 2007.

DLNR joined BLNR's supplemental brief and also explained that, in 2013, it had filed a bill of particulars concerning the Daileys' seawall violation. The bill of particulars alleged

15

that the "Daileys' reconstruction and repair of the seawall or revetment located or situated within the Conservation District along the shoreline on the makai side of their property violated [HRS] § 183C-4(b), [HRS] § 205A-43.5(a),(b), [HRS] § 205A-44(b) and [HAR] §§ 13-5-6[,] 13-5-7, 13-5-30(b) and 13-5-35(d)." DLNR further explained that a 2014 BLNR decision and order then concluded that DLNR lacked jurisdiction to enforce HRS chapter 205A; therefore, the HRS chapter 205A allegations against the Daileys were dismissed by BLNR in 2014.

### e.   Environmental court's ruling

On May 5, 2023, the environmental court granted BLNR's motion to dismiss in its findings of fact, conclusions of law, and order ("environmental court's FOF/COL"). It agreed with BLNR that this appeal arose out of HRS Chapter 183C and not HRS Chapter 205A Part III; therefore, it lacked jurisdiction over the appeal. The environmental court also declined the Daileys' request to transfer the case to this court, indicating it was not aware of any rule or case law allowing transfer and concluding it did not possess the inherent power to do so. The environmental court's final judgment was filed on June 6, 2023.

## D.   ICA proceedings

In the Daileys' appeal to the ICA, the parties essentially repeated their arguments in the environmental court. In its May 16, 2024 SDO, with respect to the appellate jurisdiction issues

16

relevant on certiorari, the ICA affirmed the environmental court's dismissal of the Daileys' appeal. Dailey v. Dep't of Land & Nat. Res., No. CAAP-23-0000415, 2024 WL 2209726, at *7 (Haw. App. May 16, 2024) (SDO). The ICA pointed out that the Daileys never disputed that their contested case arose under HRS Chapter 183C, as evidenced by the jurisdictional statements in the notice of appeal and statement of the case they filed with the environmental court. Dailey, 2024 WL 2209726, at *5. The ICA also noted that the record reflected that the Daileys' seawall was makai of the shoreline, within the conservation district. Id.

The ICA also agreed with the environmental court that the latter did not possess inherent authority to transfer the Daileys' appeal to this court. Dailey, 2024 WL 2209726, at *6. The ICA filed its judgment on appeal on July 9, 2024.

**E.  Certiorari proceedings**

On certiorari, Dailey[9] first asserts the HRS Chapter 205A Part III exception to HRS § 183C-9 applies to his appeal because the location of the shoreline was a critical issue in this contested case proceeding.

Secondly, Dailey raises a new argument that could not have been raised before the ICA's SDO: that this court's Honoipu

_____

[9]    See supra note 4.

17

opinion indicates the environmental court had the power to transfer Dailey's appeal to this court. Dailey acknowledges that Honoipu said its holding was "not a license to transfer any case from the circuit court to our court." Dailey nevertheless maintains that his appeal warrants the remedy set forth in Honoipu due to the environmental court's mistaken exercise of jurisdiction over his 2017 contested case appeal, which created confusion over the appropriate appellate procedure and an inconsistent exercise of appellate jurisdiction.

In response, BLNR distinguishes Honoipu. BLNR first argues that Honoipu's remedy of allowing a court to transfer an agency appeal to this court should apply only in the narrow circumstances presented in that case, where jurisdiction was apparently proper when the appeal was originally filed, but the parties' understanding of jurisdiction shifted following a decision from an appellate court.

### III. Standards of Review

#### A. Appellate jurisdiction

The existence of jurisdiction is a question of law, reviewed de novo. Dupree v. Hiraga, 121 Hawai'i 297, 312, 219 P.3d 1084, 1099 (2009).

#### B. Statutory interpretation

Statutory interpretation is guided by established rules:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Rees v. Carlisle, 113 Hawai'i 446, 452, 153 P.3d 1131, 1137 (2007) (cleaned up).

## IV.  Discussion

### A.    The HRS Chapter 205A Part III exception to HRS § 183C-9(a) is inapplicable; therefore, only this court has appellate jurisdiction

Dailey's first question on certiorari asks this court to determine whether the HRS Chapter 205A Part III exception to HRS § 183C-9(a)'s requirement that appeals be filed with this court applies to their appeal; if so, the environmental court would have had appellate jurisdiction.

The plain language of HRS § 183-9(a) requires appeals arising out of HRS chapter 183C to come directly to this court  The statute, however, contains an exception for "appeals . . . arising in whole or in part from part III of chapter 205A." Despite Dailey's argument, this enforcement action was undertaken entirely under HRS chapter 183C and its related Hawai'i Administrative Rules ("HAR").

19

HRS Chapter 205A Part III contains statutes providing the City with exclusive or delegated jurisdiction over shoreline setback issues.[10]  In 2014, however, BLNR abandoned any attempt to enforce HRS chapter 205A against the Daileys, acknowledging that it lacked jurisdiction to enforce shoreline setback violations.  Therefore, since that time, BLNR's enforcement action against the Daileys has been undertaken solely under HRS chapter 183C governing the conservation district.

The BLNR's problem pinning down the location of the shoreline for purposes of this case does not affect this analysis.  Even under HRS Chapter 205A Part III, it is the BLNR that determines shorelines.[11]  And the shoreline certification finalized in 2011 at the Daileys' request established that the new seawall constructed in 2006-07 had clearly been constructed in the conservation district.  The Daileys never appealed this certification.  Hence, after Act 48, pursuant to HRS § 183C-9, the environmental court lacked jurisdiction over both the 2017 second appeal as well as this appeal.

---

[10]     See HRS Chapter 205A Part III, HRS §§ 205A-41 to 205A-49 (2017).

[11]     See HRS § 205A-42 (2017).

**B.    The constitutional and statutory bases providing the judiciary with inherent power to transfer appeals outlined in Honoipu and Rosehill provided the environmental court as well as this court with the power to order transfer of the Dailey's appeal**

In their second question on certiorari, the Daileys alternatively assert that even if their appeal had been required to be filed directly with this court after Act 48, the ICA erred by affirming the environmental court's determination that it lacked authority to transfer the appeal to this court.

We need not decide whether the ICA or the environmental court erred, as error is not a prerequisite to this court's acceptance of certiorari. See Hussein, 122 Hawai'i at 514, 229 P.3d at 332. At the time the environmental court dismissed the case for lack of jurisdiction, and the ICA affirmed, this court's Honoipu and Rosehill opinions had yet to be published.

Honoipu involved a petition for a declaratory order for the LUC to change the boundary location between conservation and agricultural districts on a district boundary map. 154 Hawai'i at 373, 550 P.3d at 1231. The LUC denied the petition, and Honoipu Hideaway appealed the decision to the circuit court. Id.

Since 2016, Act 48 also expressly required that appeals from LUC contested case decisions be filed with this court, but it was silent on appeals of declaratory orders. Id. In Lingle v. Haw. Gov't Emps. Ass'n, AFSCME, Loc. 152, AFL-CIO, however,

we held that although declaratory orders are not contested cases, they have the same status for the purpose of appeal rights under HRS § 91-14. 107 Hawai'i 178, 186, 111 P.3d 587, 595 (2005). Hence, in Kanahele, we interpreted Act 48 to require agency appeals from both contested cases and declaratory orders to come to this court. Honoipu, 154 Hawai'i at 374, 550 P.3d at 1232 (citation omitted).

After Kanahele was filed, Honoipu Hideaway moved to transfer its pending appeal in the circuit court to this court. Id. In response, the LUC moved to dismiss the appeal for lack of subject matter jurisdiction. Id. The circuit court then submitted a reserved question to this court: "Whether [the circuit court] has inherent and statutory authority to transfer nunc pro tunc an appeal, which was timely filed with [the circuit court], to the Supreme Court of Hawai'i as the court with appellate jurisdiction." 154 Hawai'i at 373, 550 P.3d at 1231.

This court answered in the affirmative. Id. We held that "in order to correct jurisdiction following this court's decision in Kanahele, the circuit court may transfer the case here nunc pro tunc, or backdated to the appropriate time. Allowing such a transfer in these limited circumstances accords with our longstanding policy to hear cases on the merits, and there is both inherent and statutory power for the courts to do so." 154 Hawai'i at 374, 550 P.3d at 1232.

22

As to statutory authority for such a transfer of the appeal, this court cited the circuit court's authority under HRS § 603-21.9(1) "[t]o make and issue all orders and writs necessary or appropriate in aid of their original or appellate jurisdiction."  154 Hawai'i at 375, 550 P.3d at 1233.  We also cited HRS § 602-5(a)(5) for this court's authority "[t]o make and issue any order or writ necessary or appropriate in aid of [this court's] jurisdiction."  Id.  In addition to statutory authority, however, we also cited Hawai'i Constitution's Article VI, Section 1's "judicial power," which includes the inherent "power to administer justice," such as the power to "prevent unfair results and to curb abuses and promote a fair process." 154 Hawai'i at 376, 550 P.3d at 1234.  (cleaned up).

In Honoipu, we said that "the power to 'do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice' gives the circuit court the power to correct a jurisdictional mistake that was no party's or court's fault."  Id.  We also considered the judiciary's policy of hearing cases on the merits whenever possible.  Id.  We noted that "the judicially efficient remedy is to transfer the case to this court nunc pro tunc [to the date the notice of appeal was filed with the circuit court] so that we may address the merits

23

questions more expeditiously." 154 Hawai'i at 377, 550 P.3d at 1235.

After Honoipu, in Rosehill, landowners had also appealed an adverse LUC declaratory ruling to the circuit court. 155 Hawai'i at 45, 556 P.3d at 391. The circuit court reversed the LUC. Id. The LUC then appealed to the ICA. Id. While the appeal was pending before the ICA, we issued Kanahele. Id. In Rosehill, we accepted a transfer of the appeal from the ICA and then deemed the transfer accepted nunc pro tunc to the date the appeal was originally incorrectly filed in the circuit court. Id. We also held that, in reaching the merits of the appeal, we could use the entirety of the record although the circuit court's findings of fact and conclusions of law had no weight because the court had lacked appellate jurisdiction. Id.

We recognize that this case differs from Honoipu and Rosehill. Both Honoipu and Rosehill limited their holdings regarding appellate jurisdiction to the "limited circumstances" of those cases, where appeals of LUC declaratory orders were pending in our lower courts when Kahahele was published. Honoipu, 154 Hawai'i at 374, 550 P.3d at 1232; Rosehill, 155 Hawai'i at 50, 556 P.3d at 396. In Honoipu, we expressly stated that our opinion was "not a license to transfer any case from the circuit court to our court. Rather, in this limited circumstance, in which jurisdiction was proper when the appeal

24

was originally filed, but the parties' understanding of jurisdiction shifted following a decision from an appellate court, transfer to perfect jurisdiction is appropriate." Honoipu, 154 Hawai'i at 377, 550 P.3d at 1235.

Here, the Daileys mistakenly filed their appeal from a contested case decision to the environmental court in July 2022. The Daileys mistakenly believed the environmental court had jurisdiction, but the BLNR asserted a lack of jurisdiction in that court. Jurisdiction was not proper in the environmental court when the appeal was filed. The environmental court granted BLNR's motion to dismiss for lack of jurisdiction and declined to transfer the case to this court, stating it was not aware of any rule or case law allowing such transfer and that it did not believe it had the inherent power to transfer the appeal.

But, as noted in Honoipu, our appellate courts have long adhered to the policy of permitting litigants, where possible, to appeal and to have their cases heard on the merits. Honoipu, 154 Hawai'i at 376, 550 P.3d at 1234 (citation omitted). And, as further noted in Honoipu, various other jurisdictions have held that courts have inherent authority to transfer appeals for lack of jurisdiction when timely appeals have been filed in the wrong court. See Honoipu, 154 Hawai'i at 376, 376 n.3, 550 P.3d at 1234, 1234 n.3.

25

For example, we cited to <u>Pearce v. Dir., Off. of Workers'</u> <u>Comp. Programs, U.S. Dep't of Lab.</u>, 603 F.2d 763, 771 (9th Cir. 1979), which collected cases and noted that the Ninth Circuit has held it has "power to transfer a pending case to another circuit even when the latter circuit has exclusive jurisdiction and venue to review the order in question." We also cited to <u>People v. Nickerson</u>, 128 Cal.App.4th 33, 26 Cal. Rptr. 3d 563, 567 (2005), which points out that inherent authority, among other things, "empowers [the California appellate court] to order transfer [of an appeal]"). We also pointed to <u>Pridgen v.</u> <u>Head</u>, 282 Ala. 193, 210 So.2d 426, 429 (1968), in which the Alabama Supreme Court held in denying a motion to dismiss appeal that "[t]he fact that the appeal was taken to the Court of Appeals rather than to [the supreme court] does not justify a dismissal of the appeal. The cause has been transferred to this court in keeping with a practice of long standing where the appeal is taken to the wrong court." We also favorably cited <u>Dunn v. U.S. Dep't of Agric.</u>, 654 F.2d 64, 68 (Ct. Cl. 1981), which noted the Court of Claims' inherent power to transfer a case to a an appellate court with exclusive jurisdiction. Finally, we referred to <u>Commonwealth v. Carter</u>, 36 Pa. Cmwlth. 569, 389 A.2d 241, 242 (1978), which held that "[w]here the defect is the erroneous filing of the proceeding in the wrong

court, this error may be corrected by certifying the case to the proper tribunal."

These cases do not limit transfers of appeals to situations where parties' understanding of jurisdiction shifted following a decision from an appellate court. Rather, they recognize the much broader inherent power of courts. And, as we pointed out in Honoipu, inherent powers of courts grounded in the constitutional judicial power also provide courts with inherent power to transfer appeals to the proper court.[12] Hence, we hold that the environmental court had the power to transfer the Daileys' timely appeal to this court.

The existence of the power to transfer appeals does not mean it must always be exercised. For example, we would not countenance an attorney repeatedly filing appeals in any court on the assumption the appeals would be transferred to the court with appellate jurisdiction. But where a timely appeal is inadvertently filed in the wrong court, it should be transferred.[13] In turn, the court to which an appeal is

---

[12] We also note that HRAP Rule 3(a) (eff. 2019) allows an appeal erroneously filed with the clerk of the court or agency appealed from to effectively be transferred to the appellate court. This rule would not apply here, but this rule does provide authority for some erroneously filed appeals to be transferred.

[13] Although not applicable here, we note that courts also have the inherent discretionary power to address any prejudice to other parties through other means, such as an award of reasonable attorney fees and costs unnecessarily incurred due to the filing of appeals in the wrong court.

transferred will likewise have statutory, constitutional and inherent authority to determine whether the transfer was properly made.[14]

Therefore, we conclude the power to transfer appeals can and should be exercised under the facts and circumstances of this case. This is especially because neither the BLNR nor the environmental court noticed the lack of appellate jurisdiction in the Daileys' second appeal. And not requiring a transfer here would preclude a decision on the merits of the Daileys' appeal,[15] contravening our long-standing policy of permitting litigants, where possible, to appeal and to have their cases heard on the merits.

Hence, under the circumstances of this case, we order the environmental court to transfer the appeal to this court <u>nunc pro tunc</u> to the date of its July 15, 2022 filing as soon as this court's judgment on appeal has entered. The appeal on the merits is then to proceed in this court pursuant to the HRAP, with deadlines to correspond with the date the appeal is actually transferred to this court.

---

[14]    For example, the transferee court might determine that the appeal was untimely filed or that it should have been made to another court.

[15]    If dismissal of the appeal is affirmed, the deadline for filing an appeal to this court would have long expired.

### V.    Conclusion

Based on the reasons above, we vacate the ICA's July 9, 2024 judgment on appeal, the environmental court's May 5, 2023 "Findings of Fact, Conclusions of Law, and Order Granting Appellee Board of Land and Natural Resources' Motion to Dismiss Appeal," as well as its June 6, 2023 "Final Judgment."  We order the environmental court to transfer the appeal to this court nunc pro tunc to the date of its July 15, 2022 filing as soon as this court's judgment on appeal has entered.  The appeal on the merits is then to proceed in this court pursuant to the HRAP, with deadlines to correspond with the date the appeal is actually transferred to this court.

| | |
|---|---|
| Gregory W. Kugle and<br>David H. Abitbol<br>for petitioners | /s/ Mark E. Recktenwald |
| | /s/ Sabrina S. McKenna |
| Thomas J. Hughes<br>for respondents | /s/ Todd W. Eddins |
| | /s/ Lisa M. Ginoza |
| Lance D. Collins and<br>Bianca Isaki<br>for amicus curiae<br>Nā Papaʻi Wawae ʻUlaʻula,<br>Ka Malu o Kahālāwai, and<br>West Maui Preservation Association | /s/ Vladimir P. Devens |

